22 CV 443-V

IN THE UNITED STATES COURT FOR
THE WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| DAMION G. V DAVIS<br>   Plaintiff Pro-se | Civil Action No. |
| V. | UNITED STATES DISTRICT COURT<br>FILED<br>JUN 9 2022<br>MARY C. LOEWENGUTH, CLERK<br>WESTERN DISTRICT OF NY |
| MERRICK B. GARLAND, et al.<br>   Defendants | Type of Case: Habeas Corpus |

WRIT OF HABEAS CORPUS PURSUANT TO
28 U.S.C. § 2241, BY A PERSON SUBJECT
TO INDEFINITE IMMIGRATION
DETENTION

Now, This 27th day of May 2022, Petitioner, Damion G. V Davis, hereby petitions This court to remedy petitioner's unlawful detention by Respondents, and to eliminate petitioner continued unlawful detention by Respondents. In support of This petition and complaint for injunctive relief, petitioner alleges as follows:

## BACKGROUND

1. On July 19, 2021, Petitione filed a writ of Habeas Corpus with the Middle District court of PENNSYLVANIA, Docket No. 4:21-CV-1260, wherein he challenged his continued ordered by ICE.

2. The Petitioner has requested the Court to Place an order

(1)

for his release on a supervise supervision with an ankle Monitoring System.

3. On August 23, 2021, Respondents requested that the court deny the Petitioner's Habeas. The respondents would like the court to believe that his detention is mandatory and that it satisfied due process rules and law of the constitution.

4. On November 9, 2021, The Petitioner spoke to the Jamaican Attaché with an agent from ICE present at the scheduled interview. The Attaché informed the petitioner and the agent that she would not be issuing any travel documents for The Petitioner this event was before the Third Circuit Court granted the petitioner another Stay of Removal on December 30, 2021 after vacating the First Stay of Removal on August 30, 2021.

## CUSTODY

5. Plaintiff is in the physical custody of Defendants and U.S. Immigration and Customs Enforcement (ICE). Plaintiff is detained at The Buffalo Federal Detention Facility. Petitioner is under the direct control of Respondents and their agents.

## JURISDICTION

6. This action arises under The constitution of The United States, 28 U.S.C. § 2241(c)(1), and the Immigration and Nationality Act (INA). 8 U.S.C. § 110 et seq., as amended by the illegal Immigration Reform and Immigration Responsibility Act of 1996 (IIRIRA), Pub. L No. 104-208 Stat. 1570, and

(2)

the Administrative Procedure Act of (APA), 5 U.S.C. § 701 et seq. This court has jurisdiction under 28 U.S.C. § 2241; Art. I § 9, cl. 2 of the United States constitution (Suspension Clause); and 28 U.S.C. § 1331, as plaintiff is presently in custody under color of authority of the United States. IN addition, such custody is in violation of the constitution, law, or treaties of the United States. See.. Zadvydas v. Davis, 533 U.S. 678, 688 (2001) (we conclude that § 2241 habeas corpus proceedings remain available as a forum for statutory and constitutional challenges to post-removal-period detention.) INS v. St. Cyr, 533 U.S. 289, 301 (2001) (at its historical core, The writ of habeas corpus has served as a means of reviewing the legality of executive detention, and it is in that context that its protections have been Strongest.) Clark v Martinez, 543 U.S. 371 (2005) (holding that Zadvydas applies to aliens found inadmissible as well as removable). This court my grant relief pusuant to 28 U.S.C. § 2241, 5 U.S.C. § 702, and the all writ Act, 28 U.S.C. § 1651. Plaintiff file This Motion under 28 U.S.C. § 2254 for relief and to vacate his detention under 28 U.S.C. § 2255.

## VENUE

7. Venue lies in the Western District of New York, because petitioner is currently detained in the territorial jurisdiction of this court, at the Buffalo Federal Detention Facility. 28 U.S.C. § 1391.

## EXHAUSTION OF REMEDIES

8. Plaintiff has exhausted all administrative remedies to the extent required by law, and his only remedy is by way of this judicial action. After the Supreme Court decision in Zadvydas, the Department of Justice issued regulations governing the Custody of aliens removed. See 8 C.F.R. §241.4 Petitioner received a final order of removal on February 21, 2020. AT his 90-day" Custody review, on or about August 30, 2021, and after his 180-day review which was conducted on November 9, 2021, ICE Headquarter Post-order Detention Unit (HQPDU) informed Petitioner that it would continue to keep him in Custody despite having been detained for over six months after a final order of removal. The Custody regulations do not provide for appeal from a HQPDU custody review decision. See 8 C.F.R. §241.4 (d).

9. No statutory exhaustion requirements apply to Petitioner's Claim of unlawful detention. The Petitioner has filed a Writ of habeas Corpus pro-se Petition in the Past. The Middle District Court of Pennsylvania has not yet made its decision. However, more 9 months as past since the plaintiff has filed the habeas petition, and The petitioner still remains detained without any indication from The government of the United States or Jamaica that the petitioner's repatriation is reasonably foreseeable. A New or amended habeas petition is proper in light of these new Facts.

## PARTIES

10. Petitioner is a Native and a citizen of Jamaica. Petitioner

(4)

was first taken into ICE on October 17, 2019. Petitioner was ordered removed on February 21, 2020. Petitioner is currently in Buffalo Federal Detention Facility. ICE has continuously detained petitioner for over 30 months.

11. Respondent Merrick B. Garland is the Attorney General of the United States and is responsible for the administration of ICE and the implementation and enforcement of the Immigration and Naturalization Act (INA). As such, Mr. Merrick B. Garland has ultimate custodial authority over Petitioner.

12. Respondent and the Secretary of the Department of Homeland Security. There are responsible for the administration of ICE and the implementation and enforcement of the INA. As such, the DHS is the legal custodian of Petitioner.

13. Respondent of the ICE field office Director of the Buffalo field office of ICE and is Petitioner's immediate custodian. See.. Vasquez V. Reno, 233 F.3d 688, 690 (1st Cir. 2000), cert denied, 122 S. Ct. 43 (2001).

14. Respondent Warden of the Buffalo Federal Detention Facility, where Petitioner is currently detained under the authority of ICE, alternatively may be considered the Petitioner's immediate custodian.

## STATEMENT OF FACTS

15. The plaintiff Damion Davis was born in Jamaica. Petitioner was 11 years of age when he entered the United States.

The petitioner came to United States because of his father's line of work. Petitioner's father was a Police officer in Jamaica and worked in the same field for The United States. Petitioner entered the United States as a Legal Permanent Resident and was still a Legal Permanent Resident when ICE took him into custody. The petitioner lived in Carlisle Pennsylvania with his wife and 3 kids when ICE came into their Home and took the petitioner into custody. Petitioner's whole Bloodline are United States citizens from either birth or Naturalization.

16. On October 21, 2019, ICE charged Damion G.V Davis with being deportable - for violating his PFA. The Immigration Judge (IJ) ordered The Petitioner deported to Jamaica on February 21, 2020. Petitioner deportation became final on February 21, 2020, when The Petitioner failed to Prove That he derives citizenship from his father Delroy Davis. Petitioner appealed The (IJ) decision to the BIA, The BIA dismissed the appeal, There by making it final 30 days from the date Petitioner was ordered removed.

17. The Petitioner was placed into removal proceedings on October 17, 2019. The initial hearing was held on November 19, 2019. At the First hearing petitioner raised the issue of being a citizen of the United States. After The reviewing, The issue based upon statements from the petitioner and the attorney for the DHS The (IJ) held that the petitioner did not qualify for Derivative Citizenship. The (IJ) acknowledge petitioner claim of Derivative Citizenship. Therefore, the (IJ) addressed the merits of basis for

removal and sustained the charges of removal based upon convictions for an aggravated felony and two (CIMT) charges. The (IJ) then offered the Petitioner the opportunity to apply for relief based upon a potential fear of returning to Jamaica. Petitioner was directed to make any application for relief on this basis and a new hearing was scheduled for December 5, 2019. On December 5, 2019, the rescheduled master calendar hearing was held. At that hearing petitioner had filed an application for relief from removal. The (IJ) therefore ordered that hearing to be held on merits of the application and scheduled it for February 5, 2020. On December 5, 2019, a hear was held on Petitioner application for relief from removal. During that hearing petitioner again raised the issue of his qualification for Derivative Citizenship. Additionally, Petitioner requested a continuance of the hearing in order to retain an attorney so he could prove his claim. The (IJ) denied his request and stated that the petitioner can reserve it for appeal. With regard to the claim for citizenship the (IJ) found that the petitione did not qualify for that based upon "what was before her", which was the petitioner statement and not the evidence.

18. Therefore, the (IJ) ruled that the petitioner was waiving his rights for relief from removal based upon a claim for Asylum and closed the hearing. On February 21, 2020, the (IJ) rendered a decision and entered an order "denying" petitioner application for withholding based upon the petitioner claim of Derivative Citizenship. On May 19, 2020, petitioner through his counsel filed a timely

(7)

Motion to reopen his case with the (I J). The Motion was submitted electronically and receive by the (EOIR) court that same day. On May 27, 2020, according to the (BIA) records, the Petitioner on his own filed an untimely Motion of Appeal which was over (60) days late to the (BIA) of the (I J) February 21, 2020, removal order. On May 27, 2020, the (I J) denied the petitioner Motion to reopen on the basis that the court lack jurisdiction because of the petitioner untimely Motion to Appeal to the (BIA). Since the court record indicated that the petitioner filed an Appeal with the (BIA) of the (I J) decision, the issue was "never" investigated" in the proper aspect of the matter. Petitioner pro-se asserted that he was a U.S. citizen, although he was Jamaican from birth he claim his citizenship through his Fater Mr. Delroy Davis who naturalized on November 23, 1994. Petitioner was born on August 13, 1978 therefore; he was only sixteen years old at the time his father naturalized. At the hearing with the (I J); the Petitioner was denied citizenship, because he was unable to prove that his parents were married. Although petitioner met the other requirements of Derivative Citizenship "was not contested". The basis for finding that petitioner did not derive citizenship from his father was that petitioner did not establish that his parents were married. The (I J) overlook the issue of whether petitioner parents were considered "de facto" married under Jamaican law".

19. On October 17, 2019, ICE took petitioner into custody to await his deportation; petitioner received an final removal order on February 21, 2020. Since that time,

(8)

ICE has continuously detained petitioner for over 30 months.

20. Petitioner's custody status was first reviewed on August 30, 2021. On September 13, 2021, petitioner was served with a written decision ordering his continued detention.

21. On or about six months after petitioner's removal order became final, ICE conducted another review. In a letter, that stated (TBD) to be determining for his 180-days review. After the petitioner 180-days, review which was conducted on November 22, 2021. ICE is continuing his detention even after the Embassy of Jamaica has not issued any travel documents. Still they say that petitioner's deportation was "reasonable foreseeable, **ICE did NOT** specify how many individuals from Jamaica, it had, in fact, repatriated, indicate whether it contacted the Jamaican government again with respect to the petitioner's case, or mention whether it had received any information of when it expected petitioner's travel documents would be issued. Indeed, it gave no information concerning the existence or status of efforts to deport petitioner.

22. In the month that have passed since petitioner's last custody review, ICE has not notified petitioner of any progress in petitioner's repartriation.

23. To the petitioner knowledge, the government of Jamaica has not issued travel documents for him. Indeed, neither ICE nor Jamaica have provided any indication that Jamaica would accept petitioner in the reasonably

foreseeable future. Petitioner do not think that the Embassy of Jamaica will issue any travel document for him to be deported.

24. Petitioner has cooperated fully with ICE with all efforts by ICE to remove him from the United States. By talking to the Jamaican Embassy Attaché more than once to obtain his travel documents and answering all of ICE question truthfully and to his knowledge.

25. Petitioner has turned over his pennsylvania state (ID) has will as his social security card.

## ARGUMENTS

26. ICE has not satisfied its burden of showing that petitioner is significantly likely to be removed in the reasonably foreseeable future. Already, Petitioner has been detained for over 30 months. This period of detention exceeds the six-months presumptivel reasonable period of detetion authorized by Zadvydas.

27. Zadvydas V. Davis, 533 U.S. 678, 701 (2001). Although ICE states that it has made a request for travel documents from the Jamaican consulate the Fact is that no travel documents have been issued to date. Because The consulate has not issued travel documents, and there is no evidence when, if ever, travel documents will be issued.

28. ICE has not satisfied it's burden Petitioner must be release. See..Shefget v. Ascroft, No. 02 C 7137, 2003 WL 1964290, *5 (N.D. Ill. Apr. 28, 2003) (INS failed to carry burden of proof where no travel document had been issued, Yugoslavia alien had been detained for 17 months, and (INS) had been able to remove other aliens to Yugoslavia during that period).

29. See.. Okwilagwe v. INS, No. 3-01-CV-1416-BD, 2002 WL 356758 *2-3 (N.D. Tex. Mar. 1, 2002) (INS failed to sustain it's burden of showing alien's removal to Nigeria would occur in the reasonably foreseeable future where alien was detained for 11 months, travel documents were not issued, and no certainty existed as to when they might be issued).

30. See.. Seretse-Khama v. Ashcroft, 215. Supp. 2d 37, 503 (D.D.C. 2002) (finding that Respondents failed to meet their burden of proof under Zadryda's where they "have not demonstrated to the court that any travel documents are in their hands, nor have they provide any evidence, or even assurance from the Liberian government, that travel documents will be issued in a matter of days or even weeks or even months").

31. See also Cyclewala v. Searls, 6:21-CV-06372, 2021 U.S. Dist. LEXIS 240551. After expiration of the 90-days or 180-days removal period, 8 U.S.C. §1231(a)(6) allows the government to release aliens, subjected to an appropriate terms of supervision, if no travel

(11)

documents as been issued.

32. The Petitioner Damion Davis was born in Jamaica.
Petitioner was 11 years of age when he entered the
United States. The Petitioner was unaware of any
contract that was made with The (DHS) after entering
United States.

33. Petitioner was too young to have sign any agreement
with The (DHS) after entering the United States at
the age of eleven. The DHS would like you to Believed
That a contract was breach by the petitioner after he
was arrested and charge with a crime that made
him deportable.

34. The Petitioner has been in immigration custody since
October 17, 2019 and see no reason for his perlong detention.
Under The sixth Amendment the petitioner perlong
detention should be terminated, which also falls under
The Thirteenth Amendment and Rule 6.29, of summation
prosecutoral misconduct.

35. The thirteenth Amendment states Neither slavery Nor
involuntary servitude, should be imposed on anyone, except
as a punishment for crime whereof the party shall have been
duly convicted, shall exist within the United States, or any
place subject to its jurisdiction. However, The petitioner is
still being punish for crimes over six years old.

36. The Petitioner also sights Rule 1.06 - Obduction, ICE had

no warrent to present to the petitioner at the time he was arrested. ICE in fact used petitioner parole officer to gain entrance into the petitioner Home, ICE had no (NTA) Notice to Appear or warrent in hand to present to the petitioner after entering his place of resident.

37. The supreme court in 1889, affirmed the right to procedural due process, even in an exclusion (now, removal) hearing in most circumstances to lawful permanent resident aliens. § 2.03 of the Immigration and Nationality Act of 1952 states that every immigrant is deemed subject to the prescribed Numerical limitations.

## LEGAL FRAMEWORK For RELIEF

38. In Zadvydas v. Davis, 533 U.S. 678 (2001), The U.S. Supreme Court held that 8 U.S.C. § 1231(a)(6), when "read in light of the constitution's demands, limits an alien's post removal-period reasonably necessary to bring about that alien's removal from the United States. " 533 U.S. at 689. A "habeas court must[first] ask whether the detention in question exceeds a period reasonably necessary to secure removal. "id. at 699". If the individual's removal "is not reasonably foreseeable, the court should hold continued detention unreasonable and no longer authorized by the statute. "id. at 699-700.

39. In determining the length of a reasonable removal period, the court adopted a "presumptively reasonable period of detention" of six months. "id. at 701. After six months, the

government bears the burden of disproving an alien's good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." See.. Zhou v. Farquharson, 2001 U.S. dist. LEXIS 18239*2-*3 (D. Mass. Oct. 19, 2001) (quoting and summarizing Zadvydas). Moreover, "for detention to remain reasonable, as the period of prior post removal confinement grows, what counts as the "reasonably foreseeable future" conversely would have to shrink." Zadvydas, 533 U.S. at 701. ICE's administrative regulation also recognize that the (HQPDU) has a six-month period for determining whether there is a significant likelihood of alien's removal in the reasonable foreseeable future. See 8 C.F.R. §241.4(K)(2)(ii).

40. Evidence Showing successful repatriation of other person to the country at issue is not sufficient to meet the government's burden to establish that an alien petitioner will be deported in the reasonably foreseeable future. See.. Thompson v. INS, 2002 U.S. Dist. LEXIS 23936 (E.D.La. September 16, 2002) (government offered historical statistics of repatriation to Guyana, but failed to show any response from Guyana on the application for travel documents that INS and the petitioner had requested). Rather for the government to meet its burden of showing that alien's repatriation is reasonable foreseeable, it must provide some meaningful evidence particular to the individual petitioner's case.

41. An alien who has been detained beyond the presumptive six months should be release where the

government is unable to present documents confirmation that the foreign government at issue will agree to accept the particular individual in question. See... Agbada v. John Ashcroft, 2002 U.S. Dist. LEXIS 15797 (D. Mass. August 22, 2002) (court "will likely grant" habeas petition after fourteen months if ICE is unable to present documents confirmation that the Nigerian government has agreed to petitioner repatriation"); Zhou, 2001 U.S. Dist. LEXIS 19050 at *7 (W.D. Wash. February 28, 2002). (Government's failure to offer specific information regarding how or when it expected to obtain the necessary documentation or cooperation from the foreign government indicated that there was no significant likelihood of petitioner's removal in the reasonably foreseeable future).

42. Ignacio v. Sabol. 2016 U.S. Dist. LEXIS 62181 (M.D. Pa. May 11, 2016). The authorization for a person detention shifts from 1226(a) to 1231(a) - that is, from the pre-removal phase to the post-removal phase - at the point that a person order of removal becomes administratively final and removal is therefore certain. See.. 8 U.S.C. 1231 (a)(1)(B).

43. The Petitioner can be considered for supervised release if he was not removed within the satutory removal period set forth in 8 U.S.C. § 1231(a). The withholding of removal under 8 U.S.C § 1231(a)(b), should not be denied.

44. Although the Third Circuit has not yet addressed the issue, the court has found that the appropriate level of

Proof required from the government in these hearings to determinate by clear and convincing evidence of risk of flight or danger to the community. See.. Guerrero Sanchez v. Sabol, No. 1:15-cv-2423, 2016 U.S. Dist. LEXIS 177914, 2016 WL 7426129, at *5-6 (M.D. Pa. Dec. 23, 2016).

45. Petitioner was ordered remove on February 5, 2020, and the removal order became final on February 21, 2020. Therefore, the six-month presumptively reasonable removal period for the petitioner has ended. Furthermore, the assessment of Section 1226, detainee's dangerousness, and risk of flight must be made on current basis. See.. Chi Thon Ngo v. INS, 192 F.3d 390 (3d Cir. 1999), the Third circuit emphasized the importance of making a present assessment of a detainee's level of risk in light of the fundamental liberty interest at stake:.

## CLAIMS FOR RELIEF
### COUNT ONE
## STATUTORY VIOLATION

46. Petitioner re-alleges and incorporates by reference paragraphs 1 through 45 above.

47. Petitioner's continued detetion by respondents is unlawful and contravenes 8 U.S.C. §1231(a)(6) as interpreted by the U.S. Supreme Court in Zadvydas. The six-months presumptively reasonable period for continued removal efforts has expired. Petitioner still has not been removed, and for the reasons outlined above in 1 to 44, Petitioner's removal to Jamaica is

(16)

not reasonably foreseeable. The Supreme Court held in Zadvydas and Martinez that (ICE) continued detention of someone after six months where deportation is not reasonably foreseeable is unreasonable and it in violation of 8 U.S.C. § 1231(a). 533 U.S. at 701.

## COUNT TWO
## SUBSTANTIVE DUE PROCESS VIOLATION

48. Petitioner re-alleges and incorporates by reference paragraph 1 through 47 above.

49. Petitioner's continued detention violates petitioner's right to substantive due process through a deprivation of core liberty interest in freedom from bodily restraint. See e.g., TAM V. INS, 14 F. Supp. 2d 1184 (E.D. Cal 1998) (aliens retain substantive due process rights).

50. The Due Process Clause of the Fifth Amendment requires that the deprivation of petitioner's liberty be narrowly tailored to serve a compelling government interest. While Respondents would have an interest in detaining petitioner in order to effectuate removal, that interest does not justify the indefinite detention of petitioner, who is not significantly likely to be remove in the reasonably foreseeable future. The U.S. Supreme Court in Zadvydas thus interpreted 8 U.S.C. § 1231(a) to allow continued detention only for a period reasonably necessary to secure the alien's removal, because any other reading would go beyond the government's articulated interest — to effect the alien's removal. See ..

(17)

Kay v. Reno, 94 F. Supp. 2d. 546, 551 (M.D Pa. 2000) (granting writ of habeas corpus, because petitioner's substantive due process rights were violated, and nothing that "If deportation can never occur, the government's primary legitimate purpose in detention - executing removal - is nonsensical").

## COUNT THREE
## PROCEDURAL DUE PROCESS VIOLATION

51. Petitioner re-alleges and incorporates by reference paragraphs 1 through 50 above.

52. Under the Due Process Clause of the Fifth Amendment, an alien is entitled to a timely and meaningful opportunity to demonstrate that he should not be detained. Petitioner in this case has been denied that opportunity. ICE does not make decision concerning aliens' custody status in a neutral and impartial manner. The failure of Respondents to provide a neutral decision-maker to review the received the continued custody of petitioner violates petitioner right to due process. The petitioner has not yet received a decision from the Middle District court of Pennsylvania about his habeas motion since it was entered on July 19, 2021. Furthermore, the Respondents have failed to acknowledge or act upon the Petitioner's administrative request for release in a timely manner. There is no administrative mechanism in place for the Petitioner to demand a decision, ensure that a decision will ever be made, or appeal a custody decision that violates Zadvydas.

53. To continue Petitioner detention of removable of alien's on account of Special circumstances, 8 C.F.R. § 241.14. The Determination of whether there is significant likelihood of removing a detained alien in the reasonably foreseeable future, 8 C.F.R. § 241.13.

## REVIEW FOR RELEASE

54. If a person is ordered release by a magistrate Judge, or by a person other than a Judge of a court having original jurisdiction over the alien are a federal appellate court, The motion shall be determined promptly. A review of a detention order. If a person is ordered detained by a magistrate Judge, or by a person other than a judge of a court having original jurisdiction over the alien, a motion for revocation or amendment of the order. The motion shall be determined promptly.

55. Appeal from a release or detention order, or a decision denying revocation or amendment of such an order, is governed by provision of section 1291 of Title 28 and Section 3731 of this title. The appeal shall be determined promptly. A person subject to detention pursuant to Section 3143 (a)(2) or (b)(2), and who meets the conditions of release set forth in section 3143 (a)(1) or (b)(1), may be ordered released, under appropriate conditions, by the judicial officer, if it is clearly that there are exceptional reasons why such person's detention would not be appropriate.

56. The attorney for the government may file, with the court having original jurisdiction over the alien, a motion for revocation of the order or Amendment of the conditions of release; and the person may file, with the court having original jurisdiction over the alien, a motion for amendment of the conditions of release. 18 U.S.C. 3145(c) explicitly provides that a "judicial officer" may release a person subject to detention pending removal if the court finds the following circumstances: (1) the person is not likely to flee or pose a danger to the safety of any other person or the community if release. (2) It is clearly shown "that" there are exception reason why such person's detention would not be appropriate." id. The burden of proof with respect to both circumstances appears to be clear and convincing evidence. see.. 18 U.S.C. 3143(a).

## PRAYER FOR RELIEF

WHEREFORE, Petitione prays that this court grant the Following relief:

1. ASSUME jurisdiction over This matter;

2. Grant petitioner a writ of habeas corpus directing The Respondents to immediately release petitioner from custody, under reasonably conditions of supervision;

3. Order Respondents to refrain from transferring the petitioner out of The jurisdiction of ICE Buffalo Field office Director during the pendency of these

(20)

proceedings and while the petitioner remains in respondent's custody; and

4. Award petitioner attorney's fees and cost under the equal access to justice Act (EAJA), as amended, U.S.C. § 504 and 28 U.S.C. § 2412, and on any other basis justified under law; and

5. Grant any other and further relief that this court deems just and proper.

## CONCLUSION

For the above reason, Plaintiff Damion G. V Davis request that this court grant his writ of habeas corpus.

Respectfully submitted

_____
Signature

5 - 29 - 22
Date

## VERIFICATION

I Damion G.V Davis verify that the Statements in The above writ of habeas corpus are true and correct to The Best of my Knowledge, information and belief. I understand That false Statments herein are made Subject to penalties of 18 Pa. C. S. Section 4904 relating to unsworn falsification To authorities.

_Damion Davis_
signature

Damion Davis
print

5-29-22
Date.

ATTACHMENT

Damion G.V Davis

A# 042-256-487

Pike County Correctional Facility
175 Pike County Blvd
Lords Valley, Pa. 18428

11-21-2021

Headquarters Post-Order Detention Unit
U.S. Department of Homeland Security
Immigration and Customs Enforcement
801 I Street, N.W., Suite 900
Washington, D.C. 20536

RE: I am specifically requesting that my 180 days custody be reviewed under the Zadvydas standard

Dear Immigration Officer:

I request that ICE review my custody status while considering the following information, because I believe I qualify for release under an order of supervision. I have been in detention for more than 90 days after my removal order became final. I am not a danger to public safety, and nor am I a flight risk.

I entered the United States on November 24, 1989. Jamaica is my place of birth and that is all, I never went back to that country, went to school there nor was I raise there. All of my family is in the United States, so my whole bloodline is here, not to mention the new generations of Davis's. I do not know if my country would eventually accept me and issue travel documents for me, but if or when they do, I will comply with my removal.

I am not a danger to public safety, [YES] I have made mistakes that I could not deny, but one of my biggest mistake of all is leaving my wife and kids behind. My wife has shown me that there were better ways I could of handle certain saturation instead of letting my pride get in the way of my common sense, I should of look at the outcome of my action to determine if I was making the right choices for them. [NOW] all I want to do is to make the choices that will benefit them and to place my ego in a box and lock it away forever. I see how hard it is for my family to survive through this pandemic, my wife is working four jobs just to keep things going, but I am in here complaining about how hard my life is. When I got married and had kids I made a promise to take care of them and that I am failing to do, I would like nothing more than to take some of the pressure off my wife and to be a father to my kids. [YES] I am sorry for the things that I have done and if giving the opportunity I will prove beyond a doubt that I will never put my family or anyone else's in danger.

I am not a significant flight risk. Because I will be living at 138 North East Street Carlisle, Pa. 17013. While my wife and [I] work on re-building our relationship. If I am release, I will concentrate on working and supporting my family. I am prepared to comply with all restrictions imposed on me as part of my release. My whole family are Citizens of the United States, I have a wife and 8 kids, I have 4 by my first wife Amy Davis and 2 that is biological and 2 by marriage with my current wife Ashley Davis, my daughter Mohana Dystiny Davis died on March 2nd, 2017 and she is buried in Mechanicsburg Pa. I have no prior

**1**

Immigration violations, since this is my very first time ever been held by ICE in the 30 odd years that I have been in this country, I have never failed to appear to any Court Hearings, and so I have no history of absconding on my record for attempting to avoid imprisonment or removal.

I have cooperated with ICE's efforts to remove me from the United States. I have spoken with the Jamaican Embassy, I have answered every question honestly and I have giving them my Pennsylvania State Identification Card along with my Social Security Card , they know my place of residence because that's where they asserted me, they knew where I was born and they have taken my finger prints. I have done everything that they have ask of me.

I am an artist by trade, my life is my music, through that I have accomplish many wonderful things and I have met many wonderful and amazing peoples. They say that music is the universal language and that if you can make it here you can make it anywhere, and that might be true for some peoples, but not for all. My goals in life is not to be the biggest artist on the scene or even a really famous one, [NO] my goal is to be what my parents could not be for me, my goal is to just be there, to be there for my kids whenever they call on me. to be the one that never abandon his responsibilities, my goals are to be a father a husband and a friend. So if you ask me what I have learnt from this experience, I've learnt to never put the ones that I love through this kind of pain. Just knowing that my wife and kids have to feel this kind of hardship because of my mistakes, to experience finical downpour because of my absents is a lesson all by itself, One that I will never again repeat.

I will comply with all conditions place on my release. Any additional information, like letters of support from my wife and family can be obtain from my attorney Mrs. Brittany Henderson at the Franklin County Legal Service 717-262-2326, Email: Brittany@FCLS.net.

For these reasons, I respectfully request that I be release under an order of supervise supervision so that I may join my family, return to lawful employment, and no longer put a financial burden on my family or to the society.

CC:

Potomac Center North:
500 12th Street SW
Washington, D.C. 20536
ATTN: (ERO) Removal Division

Respectfully Submitted,

Damion Davis

**2**

COMMONWEALTH OF PENNSYLVANIA • DEPARTMENT OF HEALTH

**VITAL RECORDS**

WARNING: IT IS ILLEGAL TO DUPLICATE THIS COPY BY PHOTOSTAT OR PHOTOGRAPH

*Certification of Birth*

Date of Birth: 

State File Number:

Date Issued: FEBRUARY 20, 2018

Date Filed: FEBRUARY 20, 2018

Name:

Sex: MALE

Time of Birth: 12:38 PM

Place of Birth: CUMBERLAND COUNTY
CARLISLE, PENNSYLVANIA

Parent:

Parent: DAMION G.V DAVIS

This is to certify that this is a true copy of the record which is on file in the Pennsylvania
Department of Health, in accordance with the Vital Statistics Law of 1953, as amended.

*Audrey C. Marocco*
Audrey C. Marocco
State Registrar



THE DOCUMENT FACE CONTAINS A MULTICOLORED BACKGROUND AND MICROPRINT OF THE PHRASE "COPY"

WARNING: THIS DOCUMENT IS PRINTED ON SECURITY PAPER. DO NOT ACCEPT WITHOUT VERIFYING THE PRESENCE OF THE WATERMARK.

0003268622

Exh D

Declaration in Support of Bond for Damion Davis

I, ▮▮▮▮▮▮▮ declare and state the following:

1. Damion and I have known each other for over 12 years, and have been married for the last several years before Damion was incarcerated. I have three children and one child was with Damion, a son who is 4 years old. Damion and I also had a daughter together who died in 2018, which has been a source of strife and pain in our lives.

2. Damion and I have had our ups and downs, but he is a loving father, and having him as a coparent would greatly ease the burden on our family. Damion was there for our son's birth and has been there every day for both our son and for my other children. Having extra income would be a big help as well. Currently, my grandfather helps out with the children, but he is 77 years old and unable to keep up with them like he wants to. I don't trust bringing my children to daycare with the new Covid variants, so keeping my children safe is a large strain on me.

3. I know that Damion isn't perfect, and I am aware of his conviction record. I also know that our daughter's death was a catalyst for a lot of his behavior, including him self-medicating. For those that have never lost a child, the pain is unimaginable. It drove Damion to do things he had never done before, resulting in a few of his convictions. The pain also greatly strained our relationship, which resulted in more fighting and estrangement. People shouldn't be defined by the hardships they experience in life, and I trust Damion implicitly around my children.

4. I hope that my declaration assists in Damion's release. I know that he wants to be there for our family, and I know that, when he is released, he will be. Damion is very good at getting back on his feet and I know he will do well for himself if given the chance. He has many community ties here; he belongs with this family.

I swear under penalty of perjury that the above is true and correct to the best of my knowledge.

3-27-22
Date

_Ashley Davis_
▮▮▮▮▮▮

7

Exh. A

Declaration in Support of Bond for Damion Davis

I, Richard Callwitts, declare and state the following:

1. Damion and I met in 2019, when we were both incarcerated at York County Prison. My first impression of Damion was that he kept to himself, and trying to keep his head down and not cause any trouble. I approached him and we spoke for 3 hours; he was very easy to talk to and very welcoming. We share a love of music, and Damion's passion was remarkable. Damion did not forget our conversations, and went out of his way to stay in touch to keep our connection strong. When Damion is released, I will willingly offer my home that I share with my family as a landing spot for him as he gets adjusted to life outside of jail.

2. I have gone on to make a better life for myself, and I am living proof that people can grow and change. I know about Damion's conviction record, but I believe that what matters is what he can do with his future. My wife and family members also know that Damion has a conviction history, but they do not focus on that, because they think the same way that I do. I want Damion to have a stable place to land while he gets his career going again. I know that Damion will do whatever it takes to support himself and his family, and with all of the available warehouse jobs in my area, I know he will be able to find work quickly until he is able to get back into his music.

3. At our home, we have large family dinners every Sunday, with sometimes 20 members of my family joining us. We are looking forward to adding Damion to that group, and believe that our entire family will embrace Damion as we have done. He has a great personality and will be a wonderful addition to our group. We have all been through tough times, and I have unwavering belief in the power of people's potential, especially someone as positive as Damion.

I swear under penalty of perjury that the above is true and correct to the best of my knowledge.

3/22/2022                                    *Richard Callwitts*

_____                    _____
Date                                            Richard Callwitts

8

Exh B

THIS STATEMENT IS MADE BY ME UNDER NO DURESS OR COERCION AND IS AS FOLLOWS:

My name is Damion G.V Davis, I was born in Jamaica on August 13th, 1978 to Delroy Davis and Dorothy Hamilton. I entered the United States on November 2nd, 1989 with my mother, two brothers and little sister. I was eleven years old when I entered the United States, so I really have no memory of my country of birth. When I came to the United State I lived with my mother and then my father came and got me, so from 1992 until the early 2000 I lived with my father and my aunt Jean Davis in Staten Island New York, I went to new Dorp high school, I saw my mother and siblings only on the weekends, left home at the age of 21, and started my career in the music. I met my first wife Amy Carwee Cox in 1993, got married on her birthday November 6th, 2008 in Carlisle Pennsylvania while she was pregnant, we have two daughters Chinna Hilda Davis age 23, she just gave me my first grandbaby at the age of 42, Zayerea Alexus Davis age 21 and two sons Jahlil Clarence James Davis age 18, Kahlel Glenroy Delroy Davis age 12. Amy and (I) were together for over 16 years before we separated. I met my current wife Ashley Dawn Davis in 2009 after I relocated to Pennsylvania we became close friends before we got married on November 12th, 2016, we got two kids together Khamarley-Lee Amir Davis age 3 and our first born child Mohana Dystiny Davis who died on March 2nd, 2017, because of the actions by two Carlisle officers. I do have eight kids in all, six that is biological and two by marriage. I love my kids, all of my kids and I know if my father wasn't a police officer in Jamaica for too long it could only mean that something happened for him to relocate here, he will not tell me why but I now know by being held by ICE and opening some doors that was never meant to be open, that something bad happed for him to flee to another country and by protecting his family the way he did just confirm my suspicions. My father and I haven't spoking since my daughter's death and the lawsuit I placed against the county of Cumberland and their two officers. ICE knew nothing of me until my parole officer called them after the federal court decided to take my case up against the two police officers who assaulted me and Cause the death of my daughter, who only lived one hour in this world, the whole time she was alive, she had doctors pumping her little chest trying to keep her heart from failing again. I tried not be a distant father like my father was, but what I tried hard not to be, I ended up becoming. I am now realizing the fact that changes are necessary in order to be a better parent, [Y]es I do regret every single action, every single argument that my wife and [I] had after the passing of our daughter and although I don't know the extent of my parents relationship, I could see that it wasn't a good one and by being in here mine is also failing. I left my wife out there with three kids and my ex-wife with four. I wish I could take back everything that I have done wrong to get here, but turning back time is not on option. But I do know now and even though knowing what I know now doesn't change anything, just knowing the fact of everything changes me....

I, _DAMION G. DAVIS_, BEING DULY SWORN ACCORDING TO THE LAW, DEPOSE AND SAY THAT THE FACTS SET FORTH IN THE FOREGOING AFFIDAVIT ARE TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE, INFORMATION, AND BELIEF.

Sworn to and subscribed before me this

6 day of July 20 21

_Elissa Ewenzel_
NOTARY PUBLIC

COMMONWEALTH OF PENNSYLVANIA
Notarial Seal
ELISSA WENZEL, Notary Public
Blooming Grove Twp., Pike County
My Commission Expires Oct. 2, 2021

RESPECTFULLY,

# AFFIDAVIT

THIS STATEMENT IS MADE BY ME UNDER NO DURESS OR COERCION AND IS AS FOLLOWS:

My name is Dorothy Williams. I reside at 2928 East Fontana Court, Royal Palm Beach, Florida 33411. My birth date is March 3, 1955. I was born in Saint Elizabeth, Jamaica. I am a naturalized United States citizen. My date of naturalization was June 14, 2000 at number 25911032. At the time of my naturalization my name was Dorothy McLennon.

I am the mother of Damion Davis (A# 042256487). I understand that he is currently in removal proceedings. I am providing this letter to serve as evidence of the marital relationship between myself and Damion's father, Delroy Davis.

Delroy Davis and I became involved in a romantic relationship in 1976 when we both lived in Jamaica. As a result of our relationship Damion was born on August 13, 1978 in Jamaica. From when we first met in 1976 through the birth of Damion and until 1982 Delroy Davis and I continued to be in the relationship. Although we never went through a marriage ceremony we considered ourselves to be in a common law marriage as this is very common in Jamaica. During the time that we were together we lived at 12 Longston Terrace, Kingston, Jamaica. It was not until Delroy Davis traveled to the United States in 1982 that our relationship began to come to an end..

I, Dorothy Williams, (DOB March 3, 1955) swear, under penalty of perjury, that the foregoing is true and correct to the best of my knowledge. Thank you for the opportunity to share this information with you. Please contact me at (561) 584-3099 if you require additional information.

Sincerely,

Dorothy Williams

Notary Public State of Florida
Michael Rose
My Commission GG 179421
Expires 01/25/2022

5/7/20

Legal Mail
CONFIDENTIAL

Buffalo Federal Detention Facility
BUFFALO NY 142
TUE 07 JUN 2022   PM

?

Clerk of Court
Robert H. Jackson courtHouse
2 Niagara Square, Room # 200
Buffalo, NY. 14202

DAMion DAVIS
A#012-256-487
BFDF
4250 Federal Dr.
Batavia, NY 14020

JUN - 9 2022
BUFFALO