UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

DAMION G.V. DAVIS,

        Petitioner,

   v.                                        22-CV-443-LJV
                                                DECISION & ORDER

MERRICK B. GARLAND, *et al.*,

        Respondents.

---

Damion G.V. Davis has been detained in the custody of the United States Department of Homeland Security ("DHS"), Immigration and Customs Enforcement ("ICE"), for more than three years. Docket Item 11 at ¶ 13. On June 9, 2022, Davis filed a *pro se* petition for a writ of habeas corpus under 28 U.S.C. § 2241 challenging the validity of his detention at the Buffalo Federal Detention Facility ("BFDF") in Batavia, New York, and on August 1, 2022, he filed an amended petition through counsel. Docket Items 1, 11. The respondents moved to dismiss Davis's amended petition on August 26, 2022, arguing that this Court lacks subject matter jurisdiction over many of Davis's claims and that, in any event, the amended petition was moot and an abuse of the writ of habeas corpus. Docket Item 12. Davis replied on September 9, 2022. Docket Item 13.

For the following reasons, the respondents' motion to dismiss is granted in part and denied in part. The respondents shall answer the amended petition as set forth below.

**FACTUAL BACKGROUND**

Davis is a native of Jamaica.  Docket Item 11 at ¶ 1.  He was admitted into the United States as a lawful permanent resident in November 1989, and he has not returned to Jamaica since then.  *Id.* at ¶ 2.

Davis's father became a naturalized United States citizen in November 1994, and Davis claims that he acquired citizenship as a result of his father's naturalization.  *Id.* at ¶¶ 2, 8-9.  More specifically, Davis says that he "derived U.S. citizenship from his father under the former 8 U.S.C. § 1432(a)(3)," which extended citizenship to the children of a naturalized parent under some circumstances.[1]  *Id.* at ¶ 8.  And Davis says that if he did not derive citizenship under 8 U.S.C. § 1432(a)(3) when his father was naturalized in 1994, that statute is unconstitutional as applied to him.  *Id.* at ¶ 9.

On October 17, 2019, ICE officers took Davis into custody "without any prior warning."  Docket Item 11-1 at ¶¶ 5-6.  Davis, who "was confused [about] why [he was] caught up in immigration matters[,] expected the officers to release [him] after [they] verif[ied] that [he] was a United States citizen."  *Id.* at ¶ 7.  But Davis was not released from custody; instead, DHS charged that Davis was subject to removal from the United States as a noncitizen under various provisions of the Immigration and Nationality Act

---

[1] The former 8 U.S.C. § 1432(a) provided that "[a] child born outside of the United States of [noncitizen] parents[] . . . becomes a citizen of the United States" after "[t]he naturalization of the parent having legal custody of the child when there has been a legal separation of the parents or the naturalization of the mother if the child was born out of wedlock and the paternity of the child has not been established by legitimation," so long as "[the parent's] naturalization takes place while [the] child is under the age of eighteen" and the child resides in the United States or "thereafter begins to reside permanently in the United States."  That provision was repealed in 2000.  *See* Pub. L. No. 106-395, Title I, § 103(a), 114 Stat. 1632 (2000).

("INA"), 8 U.S.C. §§ 1101-1537.  Docket Item 11 at ¶ 6; Docket Item 12-2 at 143.  More specifically, DHS initially charged that Davis was subject to removal as a noncitizen who had been "enjoined under a protection order and ha[d] been determined to have engaged in conduct in violation of that order that involves protection against credible threats of violence, repeated harassment, or bodily injury to the person or persons for whom the protection order was issued."  Docket Item 12-2 at 143; *see* 8 U.S.C. § 1227(a)(2)(E)(ii).  About a month after Davis was taken into custody, DHS filed additional charges, alleging that he was removable as a noncitizen who had been convicted of a controlled substance offense, *see* 8 U.S.C. § 1227(a)(2)(B); as a noncitizen who had been convicted of an aggravated felony, *see id.* § 1227(a)(2)(A)(iii); as a noncitizen who had been convicted of a crime of domestic violence, *see id.* § 1227(a)(2)(E); and as a noncitizen who had been convicted of two or more crimes involving moral turpitude that did not arise out of a single scheme of criminal conduct, *see id.* § 1227(a)(2)(A)(ii).  *See* Docket Item 12-2 at 147.

On February 21, 2020, an Immigration Judge ("IJ") rejected Davis's claim of derivative citizenship and ordered Davis removed to Jamaica.  Docket Item 11-3.  On June 10, 2021, the Board of Immigration Appeals ("BIA") affirmed the IJ's decision and again rejected Davis's claim of derivative citizenship.  Docket Item 11-4.  About two weeks later, Davis filed a petition for review in the United States Court of Appeals for the Third Circuit.  Docket Item 11-5.  On December 30, 2021, a Third Circuit panel stayed Davis's removal and appointed counsel for Davis's appeal.  *See Davis v. Att'y Gen. of U.S.*, 21-2235, Docket Item 34 (3d Cir. Dec. 30, 2021).  Davis's petition for

review remains pending before the Third Circuit.  *See* Docket Item 11 at ¶ 7; Docket Item 11-5.

In the meantime, Davis, who then was detained at the Pike County Correctional Facility in Pennsylvania, filed two petitions for a writ of habeas corpus in the United States District Court for the Middle District of Pennsylvania.  *See Davis v. Att'y Gen. of U.S.*, 4:21-cv-1260, Docket Item 1 (M.D. Pa. July 19, 2021); *Davis v. Garland*, 4:22-cv-20, Docket Item 1 (M.D. Pa. Jan. 4, 2022).  On June 13, 2022, Davis's first petition was dismissed after he received a bond hearing pursuant to the Third Circuit's decision in *Guerrero-Sanchez v. Warden York County Prison*, 905 F.3d 208 (3d Cir. 2018).[2]  *See* Docket Item 12-2 at 219-35.  Davis's second petition was dismissed for the same reason about three months later.  *See Davis v. Warden of Pike Cnty. Corr. Facility*, 2022 WL 4391686 (M.D. Pa. Aug. 18, 2022), *report and recommendation adopted*, 2022 WL 4389543 (M.D. Pa. Sept. 22, 2022).

While those two petitions were pending, Davis was transferred from the Pike County Correctional Facility to the BFDF.  Docket Item 11 at ¶ 5.  Shortly after arriving at the BFDF—and before the Middle District of Pennsylvania issued a decision on either habeas petition—Davis filed a petition under 28 U.S.C. § 2241 in this Court.  Docket Item 1.

---

[2] In *Guerrero-Sanchez*, the Third Circuit concluded that 8 U.S.C. § 1231(a) "implicitly requires a bond hearing after [a noncitizen's] prolonged detention."  905 F.3d at 219.  In *Johnson v. Arteaga-Martinez*, 142 S. Ct. 1827 (2022), the Supreme Court declined to read an implicit bond hearing requirement into the text of section 1231(a) and therefore abrogated *Guerrero-Sanchez*.  *See id.* at 1830.  But the Court did not resolve whether a noncitizen detained under section 1231(a) may be entitled to a bond hearing as a matter of due process.  *See id.* at 1835 ("leav[ing] [that question] for the lower courts to consider in the first instance").

## **LEGAL PRINCIPLES**

A court "properly dismisses an action under [Federal Rule of Civil Procedure] 12(b)(1) for lack of subject matter jurisdiction if the court 'lacks the statutory or constitutional power to adjudicate it.'" *Cortlandt St. Recovery Corp. v. Hellas Telecomms., S.à.r.l.*, 790 F.3d 411, 416-17 (2d Cir. 2015) (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)). "When considering a motion to dismiss for lack of subject matter jurisdiction[,] a court must accept as true all material factual allegations in the complaint." *Jiles v. Rochester Genesee Reg'l Transp. Auth.*, 317 F. Supp. 3d 695, 699 (W.D.N.Y. 2018) (quoting *Shipping Fin. Servs. Corp. v. Drakos*, 140 F.3d 129, 131 (2d Cir. 1998)). On a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1), a court "may consider affidavits and other materials beyond the pleadings to resolve the jurisdictional issue." *J.S. ex rel. N.S. v. Attica Cent. Sch.*, 386 F.3d 107, 110 (2d Cir. 2004).

"Under Article III of the U.S. Constitution, 'when a case becomes moot, the federal courts lack subject matter jurisdiction over the action.'" *Doyle v. Midland Credit Mgmt.*, 722 F.3d 78, 80 (2d Cir. 2013) (alterations omitted) (quoting *Fox v. Bd. of Trs. of State Univ. of N.Y.*, 42 F.3d 135, 140 (2d Cir. 1994)). "A case is moot, and accordingly the federal courts have no jurisdiction over the litigation, when the parties lack a legally cognizable interest in the outcome." *Fox*, 42 F.3d at 140 (citation and internal quotation marks omitted). "The hallmark of a moot case or controversy is that the relief sought can no longer be given or is no longer needed." *Thomas v. Searls*, 515 F. Supp. 3d 34, 37 (W.D.N.Y. 2021) (quoting *Martin-Trigona v. Shiff*, 702 F.2d 380, 386 (2d Cir. 1983)).

**DISCUSSION**

I.   **DAVIS'S CITIZENSHIP CLAIM**

As an initial matter, the respondents contend that this Court lacks subject matter jurisdiction over some of the claims in Davis's amended petition. Docket Item 12-3 at 11-16. This Court agrees with the respondents that Davis's arguments about his "substantial claim" to citizenship do not belong in this Court.[3]

---

[3] The respondents also argue that this Court lacks jurisdiction to hear Davis's claim that ICE officers unlawfully arrested him on October 17, 2019. *See* Docket Item 12-3 at 14-16 (citing 8 U.S.C. § 1252(g)). And the respondents contend that even if this Court could hear that claim, release would not be the proper remedy for a purportedly unlawful arrest. *See id.*

Under 8 U.S.C. § 1252(g), "no court shall have jurisdiction to hear any cause or claim by or on behalf of any [noncitizen] arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders" except as otherwise provided in that section. So some courts have concluded that claims of unlawful arrest and detention are barred by section 1252(g). *See, e.g., Gupta v. McGahey*, 709 F.3d 1062, 1065 (11th Cir. 2013) (concluding that the plaintiff's "claims that [an ICE agent] illegally procured an arrest warrant, that the agents illegally arrested him, and that the agents illegally detained him" are "exactly the claims that § 1252(g) bars"). Courts in this Circuit, however, have concluded the opposite. *See Prado v. Perez*, 451 F. Supp. 3d 306, 312 (S.D.N.Y. 2020) (collecting cases) ("[C]ourts in this district have found that there is no deprivation of jurisdiction to hear claims arising from unlawful arrest or detention, because those claims are too distinct to be said to 'arise from' the commencement of removal proceedings."). And the Second Circuit itself has suggested the same in passing. *See Delgado v. Quarantillo*, 643 F.3d 52, 55 (2d Cir. 2011) (per curiam) (suggesting that habeas jurisdiction exists in federal district court where a noncitizen's petition "challenge[s] [] the constitutionality of the arrest and detention, not the underlying administrative order of removal").

In any event, and for the reasons stated below, Davis may be entitled to the relief he seeks because his detention has become unreasonably prolonged. So this Court need not, and therefore does not, address whether Davis's allegations about the circumstances of his arrest would lead to the same result. *See Santiago Franco v. Searls*, 2021 WL 9463174, at *2 (W.D.N.Y. Mar. 3, 2021) ("find[ing] it unnecessary to address the petition's alternative claims for relief" when one claim "alleg[ing] a due process violation" had merit and "the relief [the petitioner] s[ought]" for all the claims in his petition "[was] the same").

6

"District courts generally lack jurisdiction to entertain a direct or indirect attack on a removal order." See Lainez v. McHenry, 809 F. App'x 40, 41 (2d Cir. 2020) (summary order). That is because 8 U.S.C. § 1252(a)(5) provides that "a petition for review filed with an appropriate court of appeals" is "the sole and exclusive means for judicial review of an order of removal entered or issued under any provision of this chapter." And 8 U.S.C. § 1252(b)(9) further provides that "[j]udicial review of all questions of law and fact . . . arising from any action taken or proceeding brought to remove [a noncitizen] from the United States under this subchapter shall be available only in judicial review of a final order under this section." So when a noncitizen directly or "indirectly challeng[es]" his or her order of removal in district court, "section 1252(a)(5)'s jurisdictional bar . . . preclude[s] such an indirect challenge." Delgado, 643 F.3d at 55; see also Qiao v. Lynch, 672 F. App'x 134, 135 (2d Cir. 2017) (summary order) ("Together, [8 U.S.C. §§ 1252(a)(5) and (b)(9)] limit judicial review to determinations whose substance is 'inextricably linked' to final orders of removal and then only by courts of appeals." (citation omitted) (quoting Delgado, 643 F.3d at 55)).

Davis maintains that this Court has jurisdiction to evaluate how his "substantial claim" to citizenship affects the validity of his detention because he is not asking this Court to declare that he is in fact a United States citizen.[4] See Docket Item 13 at 8-12. But as noted above, Davis's "substantial claim" to derivative citizenship arose in his

---

[4] Davis is not quite correct on that point. In his amended petition, Davis maintains that his detention "violat[es] the Non-Detention Act," Docket Item 11 at 21, which provides that "[n]o *citizen* shall be imprisoned or otherwise detained by the United States except pursuant to an Act of Congress." See 18 U.S.C. § 4001 (emphasis added). So Davis's argument that his detention violates the Non-Detention Act squarely raises the question of whether Davis is in fact a citizen.

7

removal proceedings, where he claimed that he could not be removed because he acquired citizenship under the former 8 U.S.C. § 1432(a)(3).  *See* Docket Item 11 at ¶ 36 (noting that "[t]he Immigration Judge denied Mr. Davis's derivative U.S. citizenship claim"); Docket Item 11-3 at 10 (IJ decision rejecting derivative citizenship claim); Docket Item 11-4 at 2 (BIA decision "affirm[ing] the [IJ's] decision" that Davis "did not sufficiently establish that he is a derivative citizen of the United States").  And as Davis himself notes, his claim of derivative citizenship "is currently being litigated before the Third Circuit."  Docket Item 11 at ¶ 55; *see also* Docket Item 12-2 at 346-47 (Third Circuit order requesting briefing on Davis's arguments about Jamaican law).  So reviewing Davis's amended petition based on his "substantial claim" to citizenship would create an "odd system wherein [this Court] would examine the arguments against removal that [Davis] present[s] . . . in his petition for review, and potentially release him from detention based on a prediction about what [the Third Circuit] is likely to conclude when it decides his pending petition for review."  *Singh v. Holder*, 638 F.3d 1196, 1212 (9th Cir. 2011).

      In other words, evaluating Davis's habeas petition in light of whether he has a "substantial claim" to citizenship would require this Court to pass on the merits of the very same arguments that Davis can—and likely will—present to the Third Circuit.  Because those arguments amount to an indirect attack on whether Davis is in fact removable, this Court lacks jurisdiction to review them.[5]  *See Delgado*, 643 F.3d at 55;

---

[5] Davis cites the Ninth Circuit's decision in *Flores-Torres v. Mukasey*, 548 F.3d 708 (9th Cir. 2008), for the proposition that "federal district courts have habeas jurisdiction to adjudicate whether federal immigration officials unlawfully detained an individual with a nonfrivolous claim to United States citizenship."  Docket Item 11 at ¶ 56.  In *Flores-Torres*, the Ninth Circuit concluded that the petitioner "d[id] not have to

8

*see also Singh*, 638 F.3d at 1211 ("Because this portion of [the petitioner's] habeas petition does nothing more than attack the IJ's removal order, we lack jurisdiction to review it other than on a petition for review." (citation and internal quotation marks omitted)); *Duncan*, 439 F. Supp. 3d at 585 ("[T]he court cannot find that a challenge to detention on the basis of a citizenship claim is 'independent' of removal proceedings.").

## II.  DAVIS'S BOND HEARING

Next, the respondents argue that Davis's April 2022 bond hearing moots the instant petition.[6]  Docket Item 12-3 at 16-18.  And the respondents argue that Davis's amended petition should be dismissed as an "abuse of the writ" of habeas corpus because the Middle District of Pennsylvania previously rejected Davis's claims.  *Id.*

As outlined above, Davis has pursued substantially similar petitions in the Middle District of Pennsylvania and this Court.  And that might ordinarily moot Davis's amended

---

wait until his removal proceedings are completed and a final removal order is issued before he c[ould] secure habeas review of his citizenship claim and of his contention that he may not be detained under the INA."  548 F.3d at 713.  *Flores-Torres*'s "continued validity" has since been "call[ed] . . . into question."  *See Duncan v. Kavanagh*, 439 F. Supp. 3d 576, 585-86 & n.6 (D. Md. 2020) (noting that "it is difficult to reconcile *Flores-Torres* with later Ninth Circuit decisions").  And as noted above, the Ninth Circuit subsequently concluded that it lacked jurisdiction to evaluate a habeas petitioner's claim that he was entitled to relief based on the merits of the "underlying removal claim."  *See Singh*, 638 F.3d at 1211-12 (finding that one "portion of [the petitioner's] habeas petition is wholly intertwined with the merits of his removal order" because the petitioner "makes the same argument in his habeas petition as he makes in his petition for review—that he is not removable").  For those reasons, and for the reasons stated above, this Court concludes that the question of whether Davis has presented a "substantial claim" to citizenship belongs exactly where he is raising it: in his petition for review in the Third Circuit.

[6] Davis also received a custody review in March 2020.  *See* Docket Item 11 at ¶ 27.  The respondents do not contend that this custody review, which occurred more two-and-a-half years ago, moots Davis's amended petition.

petition or otherwise weigh in favor of dismissal, particularly because Davis filed this petition while his two other cases were pending in the Middle District of Pennsylvania. But because it is not clear on the current record whether Davis has received the relief he seeks—a constitutionally adequate bond hearing, see Docket Item 11 at 23—this Court declines to dismiss the amended petition at this time.

This Court "has evaluated procedural due process challenges to immigration detention with a two-step inquiry." Hemans v. Searls, 2019 WL 955353, at *5 (W.D.N.Y. Feb. 27, 2019). At the first step, this Court considers whether the noncitizen's detention has become unreasonably prolonged. Id. If a noncitizen's detention has become unreasonably prolonged, this Court then turns to what process that detention demands. And after weighing "the private interest affected," the "risk of erroneous deprivation of that interest through the procedures used," and the "governmental interest at stake," this Court has determined that once a noncitizen's detention has become unreasonably prolonged, the government generally must justify that detention by clear and convincing evidence at an individualized hearing before a neutral decisionmaker. See, e.g., Tapia Lopez v. Garland, 2022 WL 3009530, at *5-7 (W.D.N.Y. July 29, 2022). As a part of that individualized hearing, a neutral decisionmaker must consider whether less-restrictive alternatives to detention can reasonably serve the government's interests in detaining the noncitizen. See id. at *7 (citing Foucha v. Louisiana, 504 U.S. 71, 81 (1992)).

Although the respondents contend that Davis's bond hearing moots his petition, they do not otherwise dispute that Davis's detention has become unreasonably prolonged. And at more than three years, it almost certainly has. See, e.g., id. at *4-5

(finding that a noncitizen's detention of about thirteen months to be unreasonably prolonged); *see generally Hemans*, 2019 WL 955353, at *6 (outlining four considerations relevant to evaluating whether detention is unreasonably prolonged). So the question is whether Davis's amended petition is moot because he already received the review of his detention that the Due Process Clause requires.

Based on the record before it, this Court cannot say that the answer to that question is yes. Davis did receive a bond hearing on April 6, 2022, pursuant to the Third Circuit's decision in *Guerrero-Sanchez*. Docket Item 12-2 at 216; *see also* Docket Item 12-3 at 17. And at that hearing, the IJ ordered Davis detained because he posed a "[d]anger and significant [f]light [r]isk."[7] Docket Item 12-2 at 216.

But the record is not clear about whether the IJ also found that no less-restrictive alternatives to detention could satisfy the government's interest in detaining Davis. The IJ's written order simply finds that Davis posed a danger to the community and a flight risk; that order is silent about alternatives to detention.[8] *See id.* And as noted above, this Court previously has concluded that the Due Process Clause requires the government to demonstrate at any bond hearing that no conditions of release can reasonably serve its compelling interest in detaining a noncitizen. *See, e.g., Tapia Lopez*, 2022 WL 3009530, at *7. That is especially so under the circumstances here: Davis has now been detained for more than three years, and his petition for review is in

---

[7] Although that finding had to be supported by clear and convincing evidence under *Guerrero-Sanchez*, *see* 905 F.3d at 224 n.12, it is not clear from the IJ's decision that the IJ applied that standard of proof, *see* Docket Item 12-2 at 216. That, too, weighs against dismissing the amended petition at this time.

[8] Neither side has provided a transcript of the bond hearing, so this Court cannot discern whether the IJ considered alternatives to detention at the hearing.

the process of being re-briefed before the Third Circuit.  In light of Davis's significant detention thus far, the Due Process Clause requires that a neutral decisionmaker consider whether alternatives to detention can reasonably serve the government's regulatory interest in detaining Davis.

For those reasons, this Court cannot conclude that the relief Davis seeks "can no longer be given or is no longer needed."  *Thomas*, 515 F. Supp. 3d at 37; *see* Docket Item 11 at 23 (requesting that this Court "[o]rder that in considering [Davis's] detention," a decisionmaker "must consider alternatives to detention").  This Court therefore declines to dismiss the amended petition as either moot or an abuse of the writ of habeas corpus.

## **CONCLUSION**

For the reasons stated above, the respondents' motion to dismiss, Docket Item 12, is GRANTED in part and DENIED in part.  The Court will not consider Davis's "substantial claim" to citizenship in evaluating whether his detention has become unreasonably prolonged.  The respondents shall otherwise answer the amended petition within 21 days of the date of this order.  Davis shall have 14 days after his receipt of the respondents' answer to file a written reply.

SO ORDERED.

Dated:   November 22, 2022
             Buffalo, New York

 */s/ Lawrence J. Vilardo*
LAWRENCE J. VILARDO
UNITED STATES DISTRICT JUDGE