UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

DAMION G.V. DAVIS,

                Petitioner,

       v.

MERRICK B. GARLAND, *et al.*,

                Respondents.

_____

                              22-CV-443-LJV
                              DECISION & ORDER

      Damion G.V. Davis has been detained in the custody of the United States

Department of Homeland Security ("DHS"), Immigration and Customs Enforcement

("ICE"), for more than three years.  Docket Item 11 at ¶ 13.  On June 9, 2022, Davis

filed a *pro se* petition for a writ of habeas corpus under 28 U.S.C. § 2241 challenging

the validity of his detention at the Buffalo Federal Detention Facility ("BFDF") in Batavia,

New York, and on August 1, 2022, he filed an amended petition through counsel.

Docket Items 1, 11.

      The government then moved to dismiss Davis's amended petition, arguing that

this Court lacked subject matter jurisdiction over many of Davis's claims and that, in any

event, Davis's amended petition was moot and an abuse of the writ of habeas corpus.

Docket Item 12.  On November 22, 2022, this Court granted the motion to dismiss in

part and denied it in part.  Docket Item 14.  The Court agreed that it lacked jurisdiction

to evaluate Davis's "substantial claim" to citizenship and dismissed any habeas claim

based on that argument.  *Id.*  But the Court declined to dismiss Davis's amended

petition altogether because it was unclear whether Davis had ever received the relief he

sought: a constitutionally adequate bond hearing.  *Id.*  More specifically, the Court found

that Davis's prior bond hearing may not have been adequate because it was unclear

whether the immigration judge who conducted the hearing considered alternatives to

detention before ordering that Davis be detained.  *Id.*

On December 13, 2022, the government answered the amended petition.

Docket Item 15.  The government concedes that the immigration judge denied release

without "expressly addressing alternatives to detention" but argues that an immigration

judge need not consider alternatives to detention after finding that a noncitizen poses a

danger to the community.  Docket Item 15-1 at 13.  Moreover, the government

maintains that Davis waived any challenge to the bond hearing, was not prejudiced by

any deficiencies at that hearing, and has abused the writ of habeas corpus.[1]  *Id.* at 20-

---

[1] This Court previously declined to dismiss Davis's amended petition as an abuse
of the writ because it was unclear from the record whether Davis had received a
constitutionally adequate bond hearing.  *See* Docket Item 14 at 12.  The Court will not
revisit that decision now and therefore declines to exercise its discretion to dismiss
Davis's amended petition.  *See Rios v. Perdue*, 2013 WL 6195752, at *2 (N.D.N.Y. Nov.
27, 2013) ("Under the common law 'abuse of the writ' doctrine, a court has discretion to
dismiss a [section] 2241 habeas petition that is premised on mere repetition of a
previously asserted claim." (citation and internal quotation marks omitted)).

The Court also does not find that Davis waived his right to a constitutionally
adequate bond hearing by not arguing for release on conditions before the immigration
judge.  As an initial matter, both cases on which the government relies for its waiver
argument addressed the waiver of substantive challenges to a removal order, not
procedural due process challenges to an immigration judge's bond hearing.  *See*
Docket Item 15-1 at 20 (citing *Garcia-Aguilar v. Lynch*, 806 F.3d 671 (1st Cir. 2015); *In
re: Maria de Rodriguez-Echeverria*, 2010 WL 5173973 (BIA Nov. 30, 2010)).  And the
Court does not share the government's concern that deciding Davis's claims here would
incentivize future noncitizens to "strategically lie in wait" and present arguments in a
habeas petition that were not raised before an immigration judge.  *See id.* at 19.  First,
the sort of procedural due process claim that Davis presses here is one that the agency
lacks jurisdiction to adjudicate.  *See Blandon v. Barr*, 434 F. Supp. 3d 30, 37 (W.D.N.Y.
2020).  More generally, the Court does not quite follow the government's logic:  By the
government's telling, noncitizens would intentionally sandbag their claims before an
immigration judge with the hope of filing a successful habeas petition at a later date.
During that entire period, though, the noncitizen would remain in detention.  The
government does not explain why a noncitizen's interest in immediate release would be

23.  On December 29, 2022, Davis replied in further support of the amended petition. Docket Item 18.

This Court previously has held that due process requires that a neutral decisionmaker consider alternatives to detention before denying bond to a noncitizen held in immigration detention even if the decisionmaker finds that the noncitizen poses a danger to the community.  *See, e.g.*, *Hechavarria v. Whitaker*, 358 F. Supp. 3d 227, 241-42 (W.D.N.Y. 2019).  For the reasons that follow, this Court reaffirms that holding. Because there is no indication that the immigration judge who conducted Davis's bond hearing considered alternatives to detention before ordering that Davis be detained, his continued detention violates due process.  Davis therefore must be released unless he receives a bond hearing in which a neutral decisionmaker finds that his continued detention is justified by clear and convincing evidence.  To make that finding, the neutral decisionmaker must consider whether alternatives to detention can reasonably address the government's interest in detaining Davis.

## FACTUAL BACKGROUND[2]

Davis is a native of Jamaica.  Docket Item 11 at ¶ 1.  He was admitted into the United States as a lawful permanent resident in November 1989, and he has not

---

outweighed by his or her interest in obtaining a potentially favorable court decision at some indeterminate point in the future.  Nor does the government suggest how not raising arguments before an immigration judge increases a noncitizen's chance of success in district court.

[2] The following facts are taken from Davis's amended petition and filings with DHS.  The Court assumes familiarity with the facts as stated in its prior decision, Docket Item 14.

returned to Jamaica since then. *Id.* at ¶ 2. Davis's father became a naturalized United States citizen in November 1994, and Davis claims that he acquired citizenship under the former 8 U.S.C. § 1432(a)(3) as a result of his father's naturalization.[3] *Id.* at ¶¶ 2, 8-9.

Beginning in 2009, Davis was arrested, convicted, and sentenced for several criminal offenses, including driving under the influence, theft, disorderly conduct, resisting arrest, strangulation, assault, and drug possession. Docket Item 15 at ¶¶ 5-18; Docket Item 15-5 at 12-14. In December 2015, Davis was convicted of theft by unlawful taking and was sentenced to six months' probation. Docket Item 15 at ¶ 8; Docket Item 15-5 at 13. On February 6, 2018, Davis was convicted of a cocaine-related offense and criminal use of a communication facility; he was sentenced to fifteen to thirty months' imprisonment on the drug conviction and nine to eighteen months' imprisonment on the communication conviction. Docket Item 15 at ¶ 14; Docket Item 15-5 at 13, 30-32. Later in 2018, Davis twice was convicted of violating protection orders. Docket Item 15 at ¶¶ 15-16; Docket Item 15-5 at 14. He was sentenced to fourteen days' to six months' imprisonment for the first violation and thirty days' to six months' imprisonment for the second. *Id.* In 2019, Davis was convicted of strangulation and assault. Docket Item 15

---

[3] The former 8 U.S.C. § 1432(a) provided that "[a] child born outside of the United States of [noncitizen] parents[] . . . becomes a citizen of the United States" after "[t]he naturalization of the parent having legal custody of the child when there has been a legal separation of the parents or the naturalization of the mother if the child was born out of wedlock and the paternity of the child has not been established by legitimation," so long as "[the parent's] naturalization takes place while [the] child is under the age of eighteen" and the child resides in the United States "pursuant to a lawful admission for permanent residence" or "thereafter begins to reside permanently in the United States." That provision was repealed in 2000. *See* Pub. L. No. 106-395, Title I, § 103(a), 114 Stat. 1632 (2000).

at ¶¶ 17-18; Docket Item 15-5 at 14.  He was sentenced to five to eleventh months'
imprisonment on the strangulation conviction and six to twelve months' imprisonment on
the assault conviction.  *Id.*

On October 17, 2019, ICE officers took Davis into custody.  Docket Item 11-1 at
¶¶ 5-6.  Davis, who "was confused [about] why [he was] caught up in immigration
matters[,] expected the officers to release [him] after [they] verif[ied] that [he] was a
United States citizen."  *Id.* at ¶ 7.  But Davis was not released from custody; instead,
DHS charged that Davis was subject to removal from the United States as a noncitizen
under the Immigration and Nationality Act, 8 U.S.C. §§ 1101-1537.  Docket Item 11 at ¶
6; Docket Item 15 at ¶ 20; Docket Item 15-5 at 15.  More specifically, DHS initially
charged that Davis was subject to removal as a noncitizen who had been "enjoined
under a protection order and ha[d] been determined to have engaged in conduct in
violation of that order that involves protection against credible threats of violence,
repeated harassment, or bodily injury to the person or persons for whom the protection
order was issued."  Docket Item 15-5 at 15; *see* 8 U.S.C. § 1227(a)(2)(E)(ii).  About a
month after Davis was taken into custody, DHS filed additional charges, alleging that he
was removable as a noncitizen who had been convicted of a controlled substance
offense, *see* 8 U.S.C. § 1227(a)(2)(B); as a noncitizen who had been convicted of an
aggravated felony, *see id.* § 1227(a)(2)(A)(iii); as a noncitizen who had been convicted
of a crime of domestic violence, *see id.* § 1227(a)(2)(E); and as a noncitizen who had
been convicted of two or more crimes involving moral turpitude that did not arise out of
a single scheme of criminal conduct, *see id.* § 1227(a)(2)(A)(ii).  *See* Docket Item 15 at
¶ 21; Docket Item 15-3 at 33.

On February 21, 2020, an immigration judge rejected Davis's claim of derivative citizenship and ordered Davis removed to Jamaica.  Docket Item 11-3.  On June 10, 2021, the Board of Immigration Appeals affirmed the immigration judge's decision and again rejected Davis's claim of derivative citizenship.  Docket Item 11-4.  About two weeks later, Davis filed a petition for review in the United States Court of Appeals for the Third Circuit.  Docket Item 11-5.  On December 30, 2021, a Third Circuit panel stayed Davis's removal and appointed counsel for Davis's appeal.  *See Davis v. Att'y Gen. of U.S.*, 21-2235, Docket Item 34 (3d Cir. Dec. 30, 2021).  Davis's petition for review remains pending before the Third Circuit.  *See* Docket Item 11 at ¶ 7; Docket Item 15 at ¶ 27.

In the meantime, Davis, who then was detained at the Pike County Correctional Facility in Pennsylvania, filed two petitions for a writ of habeas corpus in the United States District Court for the Middle District of Pennsylvania.  *See Davis v. Att'y Gen. of U.S.*, 4:21-cv-1260, Docket Item 1 (M.D. Pa. July 19, 2021); *Davis v. Garland*, 4:22-cv-20, Docket Item 1 (M.D. Pa. Jan. 4, 2022).  On April 6, 2022, Davis received a bond hearing before an immigration judge pursuant to the Third Circuit's decision in *Guerrero-Sanchez v. Warden York County Prison*, 905 F.3d 208 (3d Cir. 2018).[4]  *See* Docket Item 15 at ¶ 29; Docket Item 15-4 at 39.  The immigration judge denied Davis bond

---

[4] In *Guerrero-Sanchez*, the Third Circuit concluded that 8 U.S.C. § 1231(a) "implicitly requires a bond hearing after [a noncitizen's] prolonged detention."  905 F.3d at 219.  In *Johnson v. Arteaga-Martinez*, 142 S. Ct. 1827 (2022), the Supreme Court declined to read an implicit bond hearing requirement into the text of section 1231(a) and therefore abrogated *Guerrero-Sanchez*.  *See id.* at 1830.  But the Court did not resolve whether a noncitizen detained under section 1231(a) may be entitled to a bond hearing as a matter of due process.  *See id.* at 1835 ("leav[ing] [that question] for the lower courts to consider in the first instance").

because he posed a "[d]anger and significant [f]light [r]isk."  Docket Item 15-4 at 39.

The Middle District of Pennsylvania then dismissed Davis's habeas petitions.  *See*

Docket Item 15-4 at 42-58; *Davis v. Warden of Pike Cnty. Corr. Facility*, 2022 WL

4391686 (M.D. Pa. Aug. 18, 2022), *report and recommendation adopted*, 2022 WL

4389543 (M.D. Pa. Sept. 22, 2022).

After Davis received the bond hearing but before the Middle District of

Pennsylvania dismissed his habeas petitions, he was transferred to the BFDF and filed

a petition under 28 U.S.C. § 2241 in this Court.  Docket Item 1; Docket Item 11 at ¶ 5.

As noted above, the government moved to dismiss, Docket Item 12, and on November

22, 2022, this Court granted that motion in part and denied it in part, Docket Item 14.

## DISCUSSION

Davis says that his continued mandatory detention under 8 U.S.C. § 1226(c)

violates his right to due process.[5]  *See* Docket Item 11.  He therefore asks this Court

either to order his release from detention or to "issue a conditional writ of habeas corpus

requiring [the government] to provide him with an individualized bond hearing" where a

neutral decisionmaker "consider[s] alternatives to detention and [Davis's] ability to pay

when setting monetary bond."  *Id.* at 23.  The government maintains that Davis has

---

[5] "Broadly speaking, section 1226 governs the detention of immigrants who are not immediately deportable."  *Hechavarria v. Sessions*, 891 F.3d 49, 57 (2d Cir. 2018). Section 1226(c), the statute under which Davis is detained, "provides for mandatory detention of a small class of noncitizens," including those who have committed certain offenses.  *See Velasco Lopez v. Decker*, 978 F.3d 842, 848 (2d Cir. 2020).  Section 1226(c) prohibits the government from offering covered noncitizens the opportunity to challenge their detention at a hearing.  *See Jennings v. Rodriguez*, 138 S. Ct. 830, 846 (2018).  In this case, however, Davis received a bond hearing in April 2022 under the Third Circuit's decision in *Guerrero-Sanchez*.

received constitutionally adequate process and is validly detained under section 1226(c).  *See* Docket Item 15-1.

The Due Process Clause is not offended by the mandatory detention of noncitizens for the "brief period necessary for their removal proceedings," *see Demore v. Kim*, 538 U.S. 510, 513 (2003), but may be violated by detention beyond that "brief" period, depending on the balance between the individual's and the government's interests, *see, e.g.*, *id.* at 532 (Kennedy, J., concurring).  For that reason, this Court "has evaluated procedural due process challenges to immigration detention with a two-step inquiry."  Docket Item 14 at 10 (quoting *Hemans v. Searls*, 2019 WL 955353, at *5 (W.D.N.Y. Feb. 27, 2019)).

At the first step, this Court considers whether the noncitizen's detention has become unreasonably prolonged.  If a noncitizen's detention has become unreasonably prolonged, this Court then considers what process is necessary to justify that detention. To do that, this Court begins by weighing "the private interest affected," the "risk of erroneous deprivation of that interest through the procedures used," and the "governmental interest at stake."  *See, e.g.*, *Tapia Lopez v. Garland*, 2022 WL 3009530, at *5-7 (W.D.N.Y. July 29, 2022).  And this Court repeatedly has determined that once a noncitizen's detention has become unreasonably prolonged, the government generally must demonstrate, by clear and convincing evidence at an individualized hearing before a neutral decisionmaker, that the noncitizen's continued detention is justified.  *See, e.g.*, *id.* at *7; *Lopez Alvarado v. Garland*, 2022 WL 2187263, at *8 (W.D.N.Y. June 17, 2022); *Hechavarria*, 358 F. Supp. 3d at 241-42.  Moreover, this Court has ordered that as part of that individualized hearing, the neutral decisionmaker must consider whether

less-restrictive alternatives to detention can reasonably serve the government's interest in detaining the noncitizen.  *See, e.g.*, *Tapia Lopez*, 2022 WL 3009530, at *7 (citing *Foucha v. Louisiana*, 504 U.S. 71, 81 (1992)).

The government argues that this Court has erred in ordering that last procedural safeguard.  That is, the government maintains that once an immigration judge finds that a noncitizen poses a danger to the community, the immigration judge need not consider alternatives to detention before denying the noncitizen's release.  And the government says that Davis's prior bond hearing, at which the immigration judge found that he was a danger to the community, therefore was constitutionally adequate.[6]  For the reasons that follow, this Court disagrees.

## I.      PROCEDURAL DUE PROCESS

"No one disputes that the Fifth Amendment entitles noncitizens to due process of law."  *Velasco Lopez*, 978 F.3d at 850 (citing *Reno v. Flores*, 507 U.S. 292, 306 (1993)). "Accordingly, the Due Process Clause covers noncitizens, whether their presence here is lawful, unlawful, temporary, or permanent."  *Id.*  "At the same time, however, [the Supreme Court] has recognized detention during deportation proceedings as a constitutionally valid aspect of the deportation process."  *Demore*, 538 U.S. at 523.  And

---

[6] The government does not dispute that Davis's detention has become unreasonably prolonged, and for good reason:  Davis's thirty-nine-month detention far exceeds the boundaries of what this Court previously has determined to be unreasonably prolonged.  *See, e.g.*, *Tapia Lopez*, 2022 WL 3009530, at *3-5 (finding noncitizen's thirteen-month detention to be unreasonably prolonged).  And none of the other factors that this Court has considered when evaluating the reasonableness of detention weigh against finding that Davis's detention has become unreasonably prolonged.  *See id.* (considering the length of detention, the conditions of detention, delay in removal proceedings caused by either party, and the likelihood that removal proceedings will result in a final order of removal).

Congress has "broad power over naturalization and immigration," permitting it to "make[] rules that would be unacceptable if applied to citizens." *Id.* at 521 (quoting *Mathews v. Diaz*, 426 U.S. 67, 79-80 (1976)).

"The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)).  When deciding whether noncitizens detained under section 1226(c) are entitled to greater procedural protections, this Court uses the familiar three-factor inquiry under *Mathews* and weighs

> (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the [g]overnment's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."

*Velasco Lopez*, 978 F.3d at 851 (quoting *Mathews*, 424 U.S. at 335); *see also, e.g.*, *Tapia Lopez*, 2022 WL 3009530, at *5-7 (considering the three *Mathews* factors).  "The ultimate balance involves a determination as to when, under our constitutional system, judicial-type procedures must be imposed upon administrative action." *Velasco Lopez*, 978 F.3d at 851 (quoting *Mathews*, 424 U.S. at 348).

### A.    The Private Interest Affected

Davis's interest here "is the most significant liberty interest there is—the interest in being free from imprisonment." *Id.* (citing *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004)).  "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). And "[c]ase after case instructs us that in this country liberty is the norm and detention 'is the carefully limited

exception.'"  *Velasco Lopez*, 978 F.3d at 851 (quoting *United States v. Salerno*, 48 U.S. 739, 755 (1987)).

Davis has been detained for more than three years while he has contested whether he is a citizen and his removability from the United States.  During that time, he has been held either in a correctional facility or in a facility with restrictions that this Court "has previously found . . . are akin to prison conditions, especially for detainees" like Davis who "have criminal records."  *See Tapia Lopez*, 2022 WL 3009530, at *4. And Davis's detention will continue for the foreseeable future while he pursues the "statutorily permitted appeals process" and litigates his petition for review before the Third Circuit.  *See Hechavarria*, 891 F.3d at 56 n.6.

Although the Supreme Court has "upheld detention during the pendency of removal proceedings, it has been careful to emphasize the importance of the relatively short duration of detention."  *Velasco Lopez*, 978 F.3d at 852 (citing *Demore*, 538 U.S. at 529); *see Demore*, 538 U.S. at 529 ("[I]n 85% of the cases in which [noncitizens] are detained pursuant to [section] 1226(c), removal proceedings are completed in an average time of 47 days and a median of 30 days.  In the remaining 15% of cases, in which the [noncitizen] appeals the decision of the [i]mmigration [j]udge to the Board of Immigration Appeals, appeal takes an average of four months, with a median time that is slightly shorter." (citations omitted)).  By any metric, Davis's thirty-nine-month detention far exceeds the relatively short period of detention cited in *Demore*.  Because that lengthy detention has been in conditions that resemble penal confinement, the first *Mathews* factor "cuts sharply" in Davis's favor.  *See Velasco Lopez*, 978 F.3d at 852.

**B.      The Risk of Erroneous Deprivation and the Value of Additional Procedural Safeguards**

Under the second *Mathews* factor, a court considers "the risk of an erroneous deprivation of [the private] interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards."  *Mathews*, 424 U.S. at 335.  In light of his lengthy confinement, this factor likewise weighs in favor of Davis.

Davis has been detained for more than three years in county or federal facilities. During that time, Davis has received two custody determinations: the first in March 2020 and the second in April 2022.  *See* Docket Item 11 at ¶ 10 n.4.  The government does not contend that Davis's first hearing was sufficient to satisfy due process; instead, it argues that the second bond hearing justifies Davis's continued detention.

At the second hearing, which was conducted pursuant to the Third Circuit's decision in *Guerrero-Sanchez*, the immigration judge who conducted that hearing was required to find, by clear and convincing evidence, that Davis posed a flight risk or a danger to the community before ordering him detained.[7]  *See Guerrero-Sanchez*, 905 F.3d at 224 n.12.  But it is not clear from the record that the immigration judge who held the bond hearing also considered whether conditions of release could address the government's interest in detaining Davis, and the government does not contend that the immigration judge considered alternatives to detention.  Instead, the government says that the immigration judge's finding of dangerousness was sufficient to justify Davis's

---

[7] In this Court's prior order, it noted that the immigration judge's bond decision reflected only that Davis posed a flight risk and a danger to the community, not that this finding was supported by clear and convincing evidence.  *See* Docket Item 14 at 11 n.7. The government has not offered a transcript of the bond hearing or any other information that would show what standard of proof was used.  The Court therefore orders below that the immigration judge make such a finding at a bond hearing.

detention even if the immigration judge did not consider whether conditions of release might adequately address any danger Davis that posed to the community.

This Court has concluded that due process requires an immigration judge to consider alternatives to detention even for dangerous noncitizens because civil detention is appropriate only when necessary to serve a compelling regulatory interest. *See, e.g.*, *Tapia Lopez*, 2022 WL 3009530, at *6-7 (citing *Foucha*, 504 U.S. at 81-83); *see also Lopez Alvarado*, 2022 WL 2187263, at *8.  For that reason, it is not enough for a neutral decisionmaker to find that a noncitizen poses a danger in some general or abstract sense; rather, the decisionmaker must consider whether detention is truly justified under the particular circumstances.  And that requires addressing whether alternatives to detention can reasonably satisfy the government's interest in community safety.  *See Tapia Lopez*, 2022 WL 3009530, at *6-7.  In other words, once a noncitizen's detention has become unreasonably prolonged, the noncitizen's strong interest in being free from prolonged incarceration requires the government to show that the noncitizen poses a danger to the community that cannot be addressed through conditions of release.

In this case, the immigration judge's failure to consider alternatives to detention clearly "impacted [Davis's] ability to secure bail" and therefore increased the risk that he was wrongfully detained.  *See Velasco Lopez*, 978 F.3d at 852.  After all, it stands to reason that an immigration judge who does not even consider conditional release may wrongfully detain certain noncitizens who might otherwise be safely released.  And the risk of erroneous deprivation is particularly acute here, considering that Davis has been detained for more than three years while he challenges his removal order.  *See id.* at

853 ("[A]s the period of confinement grows, so do the required procedural protections

no matter what level of due process may have been sufficient at the moment of initial

detention." (alterations, citation, and internal quotation marks omitted)).  So the second

*Mathews* factor weighs in favor of requiring additional process here.

　　The government maintains the above analysis is incorrect because noncitizens

generally are entitled to less procedural protection than citizens and "precedents outside

the immigration context are not to be relied upon in defining the procedures due to a

detained noncitizen."  Docket Item 15-1 at 18 (citing *Miranda v. Garland*, 34 F.4th 338,

361 (4th Cir. 2022)).  But those general principles do not end the specific inquiry into

what process is due to noncitizens who are detained while their civil immigration

proceedings are pending.  And for the reasons stated above, due process requires that

a neutral decisionmaker consider whether Davis can be released on conditions that

would adequately address the government's interest in protecting the community.

　　The Court acknowledges that the Ninth and Fourth Circuits recently have

reached the opposite conclusion.  In *Martinez v. Clark*, 36 F.4th 1219 (9th Cir. 2022),

the Ninth Circuit held that "[d]ue process does not require immigration courts to consider

conditional release when determining whether to continue to detain a[ noncitizen] under

[section] 1226(c) as a danger to the community."  *Id*. at 1231.  That is, the Ninth Circuit

reasoned that once an immigration judge decides that a noncitizen poses a danger to

the community, the noncitizen's detention necessarily is "reasonably related to the

government's interest in protecting the public," and the immigration judge therefore

need not consider possible alternatives to detention before denying bond.  *Id.* at 1232

(citation and internal quotation marks omitted).  Likewise, in *Miranda*, the Fourth Circuit

held that immigration judges need not consider a noncitizen's "ability to pay any bond amount and alternative measures to detention" during bond hearings held under 8 U.S.C. § 1226(a) because due process does not require that the government employ "less burdensome means of achieving [its] goals."  34 F.4th at 363-64 (citing *Demore*, 538 U.S. at 528 ("When the [g]overnment deals with deportable [noncitizens], the Due Process Clause does not require it to employ the least burdensome means to accomplish its goal." (alterations omitted)).

This Court respectfully disagrees with those decisions.  First, a noncitizen's detention is not necessarily reasonably related to the government's interest in community safety simply because the noncitizen might pose some danger to the community in the abstract.  Instead, a noncitizen's significant interest in avoiding the sort of prolonged detention that Davis has experienced requires that the government show that conditions of release cannot address the public safety concerns that might justify detention.  That is the link that makes detention necessary in light of the danger that a noncitizen may pose to the community.

Indeed, finding that a noncitizen's detention is necessary because release poses a danger to the community without also addressing whether conditions might ameliorate or even eliminate the danger posed begs the question:  How can an immigration judge decide that a noncitizen's detention is necessary to prevent danger to the community unless the immigration judge also considers alternatives that might eliminate that danger?

Consider, for example, a noncitizen with a long history of driving-related offenses.  That noncitizen might well pose a serious danger to the community.  But that

danger would be ameliorated if the noncitizen were released on the condition that he or she not drive a car.  So if that alternative to detention were available, the noncitizen's continued incarceration would not have "some reasonable relation to the purpose for which [he or she was] committed."  *Foucha*, 504 U.S. at 79; *see also Miranda*, 34 F.4th at 379 (Urbanski, J., concurring in part and dissenting in part) (concluding that "due process requires the government to consider . . . alternative release considerations" because civil commitment must "bear some reasonable relation to the purpose for which the individual is committed").  Stated another way, the noncitizen's detention would not be necessary to serve the government's interest in protecting the community if conditions of release could serve that interest just as effectively.

Moreover, even if government need not "employ the least burdensome means to accomplish its goal" when detaining noncitizens, *Demore*, 538 U.S. at 528, it does not necessarily follow that the government may disregard the availability of "*less* burdensome means of achieving [its] goals,*" *Miranda*, 34 F.4th at 363-64 (emphasis added).  So this Court, like others in this Circuit and this district, declines to adopt the government's argument here.  *See, e.g.*, *Mathon v. Searls*, 2022 WL 3699435, at *8 (W.D.N.Y. Aug. 26, 2022) ("By refusing to consider alternatives to detention *because* she found that [the noncitizen] was a danger to the community, the [immigration judge] . . . improperly relieved the government of the burden of proving by clear and convincing evidence that there were no alternatives to detention that could mitigate any risk of flight or danger to the community." (emphasis in original)); *Fernandez Aguirre v. Barr*, 2019 WL 4511933, at *5 (S.D.N.Y. Sept. 18, 2019) ("By failing to consider alternatives to

16

detention, the [immigration judge] failed to comply with the requirements of due process.").

### C.    The Government's Interest

Finally, the Court recognizes that the government's interest in detaining Davis may well be very strong.  In fact, noncitizens like Davis who are detained under 8 U.S.C. § 1226(c) "are not entitled to be released under any circumstances other than those expressly recognized by the statute."  *Jennings*, 138 S. Ct. at 846.  So in mandating the detention of criminal noncitizens, the statute reflects a governmental interest in reducing the risk of danger to the community.  *See Demore*, 538 U.S. at 518-19 (explaining that Congress found that "deportable criminal [noncitizens] who remained in the United States often committed more crimes before being removed"); *see also Velasco Lopez*, 978 F.3d at 854 (noting that the government's interest in "ensuring [that detained noncitizens] do not commit crimes" is "well-established and not disputed").  And by reaching the decision it does in this case, this Court is not suggesting that this important interest be discounted in any way.[8]

But it is less clear that the government has a significant interest in detaining noncitizens whose risk of danger to the community can be addressed by conditions of

---

[8] In fact, in light of Davis's significant history of serious drug offenses and violent crimes, it might be tempting simply to say that his detention is warranted here.  But that finding would not account for possible conditions of release, and therefore would not be based on whether detention is necessary, for all the reasons stated above.  Instead, whether Davis must be detained in light of the danger he poses to the community is a question that the immigration judge must answer—and only after the immigration judge considers alternatives to detention.  So this Court declines to weigh the government's evidence of dangerousness and leaves that decision to the immigration judge in the first instance.

release.  And the potentially reduced significance of the government's interest is even more pronounced here, considering that Davis has been detained for well over three years.  *See id.* at 855 ("[T]he longer detention continues, the greater the need for the [g]overnment to justify its continuation.").  So even if the government's interest in detaining noncitizens who pose a danger to the community is substantial, that does not outweigh the other *Mathews* factors here.[9]

### D.    Conclusion

"[D]ue process is flexible and calls for such procedural protections as the particular situation demands."  *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972).  In the particular situation here, Davis has been detained for more than three years while he does simply what he is entitled to do under the law: litigate his removal proceedings before the agency and the federal courts.  Due process requires that this exceedingly prolonged detention be justified not only by a finding that Davis poses a danger to the community but also a finding that this danger cannot be reasonably addressed by alternatives to detention.  Because the immigration judge did not consider alternatives to detention before denying Davis's release, his continued detention violates due process.[10]

---

[9] Although the government's interest under *Mathews* also includes the "fiscal and administrative burdens that the additional or substitute procedural requirement would entail," *see Mathews*, 424 U.S. at 335, the government has not pointed to any increased costs or burdens associated with requiring an immigration judge to consider alternatives to detention.  This Court therefore declines to speculate about any administrative or fiscal costs associated with the process it orders here.

[10] Because Davis has not received what he seeks in the amended petition—a constitutionally adequate bond hearing in which a neutral decisionmaker considers alternatives to detention—the Court finds that he has sufficiently demonstrated prejudice and declines to dismiss the amended petition on that basis.  *See Velasco*

## II.    REMEDY

Davis's detention has become unreasonably prolonged.  Because section 1226(c) does not require—indeed, does not permit—an individualized bond hearing in which the government must demonstrate by clear and convincing evidence that no conditions of release can reasonably serve the government's compelling regulatory interest in detaining Davis, and because Davis has not in fact received such a hearing, section 1226(c) is unconstitutional as applied to him.  As a result, his continued detention violates the Due Process Clause.

In cases like this one, this Court has ordered the government to conduct a hearing before a neutral decisionmaker where it would be required to show, by clear and convincing evidence, that Davis's continued detention was necessary to achieve a compelling regulatory interest.  *See, e.g.*, *Tapia Lopez*, 2022 WL 3009530, at *7; *Lopez Alvarado*, 2022 WL 2187263, at *8.  But Davis maintains that his immediate release from custody is appropriate here in light of his exceedingly prolonged detention and the government's failure to provide an adequate bond hearing.  Docket Item 18 at 17-18.

Although the Court recognizes that Davis's detention stretches well beyond what this Court previously has found to be unreasonably prolonged, immediate release is not appropriate either.  This is not a case where an immigration judge held a bond hearing but blatantly disregarded this Court's order.  *Cf. Enoh v. Sessions*, 2017 WL 2080278, at *8, *11 (W.D.N.Y. May 15, 2017) (releasing the petitioner where the immigration judge "chose to rely on general factual background in this Court's order" and did not

---

*Lopez*, 978 F.3d at 855 ("The equitable and flexible nature of habeas relief [] gives the reviewing court considerable latitude to correct errors that occurred during the prior proceedings." (alterations, citation, and internal quotation marks omitted)).

"make any factual findings about exactly what happened" at the court-ordered bond hearing).  In fact, this Court has not ordered that a neutral decisionmaker even conduct a hearing, so there was no order to disregard.  And given the government's possibly strong interest in detaining Davis, the Court declines to release him now and instead orders that the government provide Davis with a hearing that complies with this decision.  *See Mathon v. Feeley*, 2021 WL 9349141, at *5 (W.D.N.Y. Oct. 13, 2021) ("Interests of comity have led federal courts to favor conditional writs of habeas corpus, which allow the Government an opportunity to correct its constitutional violations.").

## **CONCLUSION**

For the reasons stated above, Davis's petition is granted in part.  Davis must be released unless, within 14 calendar days from the date of this decision and order, the government demonstrates by clear and convincing evidence before a neutral decisionmaker that Davis's continued detention is necessary to serve a compelling regulatory purpose, such as minimizing risk of flight or protecting others or the community.  As part of that calculus, the decisionmaker must consider—and must address in any decision—whether there is clear and convincing evidence that there are no less-restrictive alternatives to physical detention, including release on conditions, that could reasonably address the government's interest in detaining Davis.  In other words, the decisionmaker must find, by clear and convincing evidence, that no condition or combination of conditions of release can reasonably ensure Davis's appearance and the safety of the community—that is, even with conditions, Davis presents an identified and articulable risk of flight or a threat to an individual or the community.

Within 30 days of the date of this order, the government shall file an affidavit

certifying compliance with this order.  That affidavit should attach a copy of the bond

hearing order.


       SO ORDERED.

       Dated:  February 7, 2023
               Buffalo, New York


                       */s/ Lawrence J. Vilardo*
                      LAWRENCE J. VILARDO
                      UNITED STATES DISTRICT JUDGE